BANK OF HATFIELD *v.* BRUCE.

Opinion delivered June 9, 1924.

1. BANKS AND BANKING—LOAN.—Evidence *held* to justify a finding that defendant bank was indebted to plaintiff for money loaned by her to it.

2. BANKS AND BANKING—LOAN—INSTRUCTION.—Where there was evidence tending to prove that the vice president of defendant bank, acting on behalf of defendant, borrowed money from plaintiff, and that the bank actually received the money, it was not error to refuse to instruct the jury that, before they could find for the plaintiff, they must find that the vice president had authority to represent the bank.

3. BANKS AND BANKING—DISCHARGE OF LOAN.—Where there was evidence that plaintiff loaned money to a bank through its vice president, and that the vice president subsequently executed and delivered a note to plaintiff for the amount of the loan, and made a small payment thereon, it was *held*, under the evidence, that, whether the acceptance of the note was a waiver of any claim against the bank, was a question for the jury.

4. PAYMENT—NOTE OF THIRD PERSON.—When a creditor receives from his debtor the note or bill of a third person, the presumption is that he takes it by way of security.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge: affirmed.

*Norwood & Alley,* for appellant.

Her acceptance of the note, not signed by the bank, but by Johnson and his brother, and taking it away and keeping it, was a waiver of any claim against the bank for the money. 158 Ark. 119. The statement sent her by the bank was an account stated, and, if it was in any way incorrect, she should have made that fact known to the bank in a reasonable time. 126 Ark. 266; 117 U. S. 96; 27 L. R. A. 823; 29 L. R. A. (N. S.) 342; 1 R. C. L. 216. Johnson, according to the undisputed evidence, got the full benefit of the loan. His acts in this transaction, he being the vice president with limited authority, negotiated by himself, which resulted in benefit only to himself, were not binding on the bank. 170 U. S. 133; 3 R. C. L. 440, § 86; 126 Ark. 266.

*Minor Pipkin,* for appellee.

1. The statement of appellee's account, accompanied by the canceled check payable to the bank, was evidence and notice to her that the amount of her deposit account had been appropriated by the bank to its own use, and that was in accordance with her understanding that she had loaned the money to the bank. 65 Ark. 316. An account rendered is binding upon the party rendering it, as well as upon the other party. 28 Ark. 447.

2. Johnson was publicly held out as having authority to bind the bank. Appellee and the public generally had the right to presume that he actually had the authority which he was held out as having, and which was to be implied from the position he held, unaffected by any secret restrictions on his power and duties in connection with the business of the bank, of which neither appellee nor the public were shown to have had any notice. 1 Michie, Banks & Banking, 696, note 12, and cases cited.

WOOD, J. This is an action by Mrs. L. B. Bruce against the Bank of Hatfield to recover the sum of $250.54, which she alleged was loaned the bank on the 19th day of January, 1921; that the bank was to pay her the sum of 10 per cent. interest on the loan from

date. The bank denied that it borrowed any money from Mrs. Bruce, and denied that it was indebted to her in any sum.

Mrs. Bruce testified substantially as follows: In January, 1921, she had money on deposit in the Bank of Hatfield. She had transacted business with the bank prior to that time. At that time she had a conversation in the bank with Louis Johnson, who had been working several years in the bank. She transacted her business with the bank through him. She was thinking of taking her money out of the bank and loaning it to some farmer. Johnson asked her to loan it to the bank, and told her that it would pay 10 per cent. interest. She replied that if she could not loan it in any other way she would let it go in that way. Johnson was vice president of the bank, and in charge of the same at the time. He told witness that, if she would let the bank have the money, the bank stood good for it—"was behind every bit of it." She agreed with Johnson to let the bank have the money. She had on deposit at the bank at the time, $250.54. She had no other understanding at all, only her money was in the bank safe and was to draw 10 per cent. interest. She afterwards received the following statement from the bank:

"Statement of your account from March 2-20, to Jan. 25, 1921. Bank of Hatfield, Hatfield, Arkansas, in account with Mrs. L. B. Bruce, city.

| Date | Checks in detail | Date | Deposits |
|---|---|---|---|
| | Bal. brought for'd | | |
| Jan., 1921 | $250.54 | Mar. 2, '20 | $118.25 |
| | | Jan. 10, '21 | 7.29 |
| | | Jan. 10 | 125.00 |
| | | Bal. January 25, '21 | .00 |

"This statement is furnished you instead of balancing your pass book. It saves you the trouble of bringing your pass book to the bank and waiting for it to be balanced. These statements will be found very convenient to check up and file. All items are credited subject

to final payment. Use your pass book only as a receipt book when making deposits.''

Attached to the statement was the following check:

''Hatfield, Ark., 1-19-21.    The Bank of Hatfield 81-356    Pay to the order of B. of H. $250.54, two hundred fifty and 54 dollars.   Mrs. M. B. Bruce 'L.' ''

Witness didn't draw the check, but supposed the letter ''L'' was for Louis Johnson. She didn't know whether the letters ''B of H'' meant Bank of Hatfield or not. After the loan was made in January, she made inquiries either in June or July. She wrote to M. J. Dover to know how much she had in the bank, and in reply he wrote her the following letter:

''Hatfield, Ark., May 30, 1922. Mrs. Vandie Bruce, Hatfield, Arkansas. Dear Mrs. Bruce: Ans. your letter of May 29, we find you have a checking account of $75, and you have a time deposit for $125. This is all I have been able to find. Hoping this is the information you wanted. Yours very truly, M. J. Dover.''

After she had received the above information she went to the bank and obtained the note. She talked to Mr. Holder, who was working in the bank at the time. She asked him about the note. She loaned the money to the bank in January, and did not know that the note was there until May, or thereafter. She heard that she had a note, but did not know for certain until she went and saw it. When she went down and asked them for it, they said it was Louis Johnson's. That was the first time she knew who had signed the note. She saw it, and left it there. When she got the note, she asked for her money, and they refused to pay her. After she instituted this action against the bank, she received $10 from Johnson, and that is all she had ever received. At the time she loaned the money to the bank she did not talk to anybody except Johnson. She did not know at that time who the president or cashier of the bank was. She did not know what position Johnson held; supposed that he was the manager. At the time she loaned the bank the money she was already receiving four per cent. Johnson did not

tell her that he would use the money himself. Two or three weeks after the deal was made in the bank there the check came to her through the mail. When she loaned the money to the bank she never asked for any note. There was nothing said about a note. After Dover became interested in the bank, she went down and got the note. Mr. Henry Miller went with her. Holder got the note and delivered it to her, and read it to her at the time. She saw that the name of the bank was not signed to the note. This was some time in June or July, 1922. The note referred to was introduced in evidence, and the material parts thereof are as follows:

"One year after date I, we, or either of us promise to pay to Bank of Hatfield, Mrs. L. B. Bruce or order, the sum. of two hundred fifty and 54 dollars, for value received, with interest at the rate of 10 per cent. per annum from date, payable at the Bank of Hatfield."

The note was signed L. H. Johnson and G. H. Johnson.

Witness asked for the money when she got the note, and Johnson said, "Mrs. Bruce, I am in hard shape now —I can't pay it now, but I will pay it just as soon as I can." She did not ask Johnson for the money—asked the bank for it. She did not get the note from Johnson. She was asking the bank to give her the note, and asking them for her money, and she was talking to the bank and Johnson. Holder was the member of the bank to whom she was talking. She did not demand the money of any certain person, but demanded it of the bank. She took the note away and kept it. She wrote Dover the following letter:

"Hatfield, Arkansas, May 29, 1922. Mr. M. J. Dover. Kind friend: Will you please look on the books and see if there is $250 that I had in the bank when I loaned my money to Louis Johnson. I loaned him $250; look on the book and see if it is there; write it plain so I can understand it."

She did not do the writing herself, but had her neighbor, Mrs. Miller, to write it for her. She never saw the

letter after it was written.   She did not have Mrs. Miller
to put what was in the letter about Johnson.   Mrs. Miller
drew on her imagination in writing that.   She told Mrs.
Miller how much she had loaned the bank, and witness
and Johnson were the ones that did the talking.   Mrs.
Miller is related to the witness.   Witness asked Mrs.
Miller to write the letter to Dover to see whether there
had been any more money put in there besides the $75.
She had been informed that $75 was all that had ever
been put on the bank book for her.   After the loan was
made the first and only statement she received was the
one introduced in evidence.   She saw from the statement
that the amount was in there that she put in the bank.
She did not understand the balance of the statement—
did not understand the bank.

Witness Henry Miller corroborated the testimony of
Mrs. Bruce to the effect that he went with her to the
bank when she got the note.   When she got there, she
first asked for the note.   They gave her the note, and she
asked for the money, and they paid no attention to her,
and she turned and walked out.

E. D. McDaniels testified that he was in the bank
with Mrs. Bruce in January, 1921, and heard the con-
versation between her and Johnson about the money.
Johnson had been talking to Bruce, and Bruce came back
to where Mrs. Bruce was and told her the bank would
take her money and pay her 10 per cent.; that was said in
the presence of Johnson.   Johnson replied, "Yes, we will
take all you have got and pay you 10 per cent."   Johnson
had been working at the bank for a long time, and was
working there then, and witness supposed he was an
officer, and it was here conceded that he was at that time
the vice president of the bank.

E. D. Holder, who was a witness for the bank, testi-
fied that he was cashier for the bank in 1921.   He remem-
bered Mrs. Bruce coming and getting the note, but heard
nothing said about paying the money.   At that time wit-
ness and Carl Robins had the management of the bank
and the borrowing and lending of money.   Johnson's

duties at that time were making collections on the out-
side. Because of previous mismanagement Johnson had
been displaced by the Banking Department at Little Rock
and by the officers of the bank from his position as man-
ager. Witness kept the books and records, in addition
to his duties as the cashier. Johnson got the money, as
shown by the deposit slip to him. The bank never
received any of it. Johnson got credit for it. He had
no authority to borrow money for the bank. The bank
never borrowed money and paid 10 per cent. on it.

Johnson testified that he was connected with the bank
in January, 1921, working in and out of the bank. Mrs.
Bruce had the money in controversy on deposit, and was
going to put it on time deposit at 4 per cent., so witness
borrowed it at 10 per cent. After talking with Bruce,
witness and Bruce then talked with Mrs. Bruce, and they
loaned the money to witness. Witness gave his note.
He was in the bank when Mrs. Bruce came and got the
note. Witness made a payment on the note of $10 after
he went to Muskogee, in January, 1923.

At the conclusion of the above testimony the defend-
ant, in its prayer for instruction No. 1, asked the court
to instruct the jury to return a verdict in its favor. The
defendant also, in its prayer for instruction No. 4, asked
the court to instruct the jury that, before they could find
for the plaintiff, they would have to find by a preponder-
ance of the evidence that Johnson had authority to con-
tract with the plaintiff, as alleged by her, and borrow
money for the bank, and that he did borrow for the
bank the money in question. The court refused the above
prayers for instructions, to which rulings the defendant
objected and duly excepted.

The court instructed the jury, in defendant's prayer
for instruction No. 2, that, if they believed from the
evidence that Johnson made an agreement with plaintiff
to use the money sued for, and drew a check for said
amount, and the same was charged to the account of
plaintiff, and the money appropriated by Johnson to his
own use, and that the bank received no benefit from the

transaction, they should find for the defendant, unless they believed that, in dealing with the defendant, Johnson was acting for the bank and had authority to borrow the money and bind the bank for the payment of the amount; that the burden was on the plaintiff to prove such authority. And, in its prayer for instruction No. 3, the court told the jury that they should find for the defendant, unless they believed from a preponderance of the evidence that Johnson borrowed the money from the plaintiff for the Bank of Hatfield, and had authority from the directors of the bank to borrow the money, or had been publicly held out as having authority to borrow money for the bank.

The court gave plaintiff's prayer for instruction No. 1, which, in effect, told the jury that, if they found from a preponderance of the evidence that plaintiff loaned a sum of money to the Bank of Hatfield, and that same was past due and unpaid, they should find for the plaintiff in whatever sum they found to be due, less any payment made thereon, with interest from the date of the loan, not exceeding the amount claimed in the complaint.

And in prayer for instruction No. 2 the court told the jury, in effect, that the mere fact that the plaintiff received and holds the note of Johnson, which she alleged to be due her by the defendant, would not constitute a defense to the action, unless the note was received by the plaintiff with the agreement and understanding between her and the defendant that the latter was to be released from the obligation; that, before the jury could find for the defendant, they must find by a preponderance of the evidence that the plaintiff did receive and accept the note with the agreement and understanding between her and the defendant that the defendant was thereby released; that, unless they so found, they should return a verdict in favor of the plaintiff.

The jury returned a verdict in favor of the plaintiff in the sum of $240.54, with interest at 10 per cent. from the 19th of January, 1921. The court entered a judgment in favor of the plaintiff against the defendant

in the aggregate sum of the principal and interest, as found by the verdict, amounting to the sum of $296.90, from which judgment is this appeal.

1.  The principal contention of appellant is that there is no evidence to sustain the verdict, and that the court therefore erred in not directing a verdict in its favor.  We cannot concur in this view of the testimony, but, on the contrary, we are convinced that the issue as to whether or not the appellant was indebted to the appellee for money loaned by the latter to the former, as alleged in the complaint of the appellee, was an issue for the jury under the evidence.

The testimony is set out above, and speaks for itself. The jury could have found from the testimony of the appellee that she loaned the money to the bank on January 19, 1921.  She testified that Johnson, who was the vice president of the bank, conducted the negotiations for the loan on behalf of the bank; that this transaction took place two or three weeks before the 25th of January, 1921; that on that day she received a statement of her account with the bank.  The statement was identified by her, and was introduced, and it showed that she had on deposit in the bank in January, 1921, the sum of $250.54; that this sum had been checked out, and there was no balance on January 25, 1921.  Attached to the statement was a check drawn by the appellee, signed by the letter "L," on the Bank of Hatfield, payable to the order of "B of H" in the sum of $250.54, dated January 19, 1921. The testimony showed that the letters "B of H" stood for Bank of Hatfield.

The jury were justified in finding, from the above testimony, that the loan was made to the bank, and not to Johnson.  The statement, together with the canceled check, fully corroborates the testimony of the appellee that the bank received the sum of $250.54, the amount of money which she had on deposit in the bank at the time the loan was consummated.  The testimony of the appellee was to the effect that Johnson, at the time, was in the bank, where he had been working for several years, and

it was shown that he had the management of the bank and that he was at the time the vice president thereof. Her testimony was to the effect that she agreed, at the request of Johnson, to loan the money to the bank at the rate of 10 per cent. The testimony of McDaniels, which was competent, tended to corroborate the testimony of the appellee as to the loan. Furthermore, the canceled check drawn by the appellee in favor of the bank, which the bank in the statement showed that it received, was proof as strong as holy writ that the bank received the appellee's money. If the bank afterwards loaned this money to Johnson, or if Johnson used the same, as the testimony tended to prove, that was no concern of the appellee, and did not relieve the appellant of its obligation to pay if it had borrowed appellee's money. It could serve no useful purpose to discuss in further detail the testimony bearing on the issue as to whether or not the appellee loaned the bank the money, as alleged in her complaint. The appellant contends that the undisputed testimony showed that Johnson, and not the bank, got the money, but, as we have stated, the appellant was not correct in this contention. The jury might have found from the bank's statement, including the canceled check, that the bank, and not Johnson, received the money.

The issue as to whether or not the bank received the money was submitted to the jury under correct instructions. At least the instructions were as favorable to the appellant as it had the right to ask, and, since there was substantial evidence to sustain the verdict, it is conclusive here. The court did not err in refusing appellant's prayer for a directed verdict.

2. The court did not err in refusing appellant's prayer for instruction No. 4, which asked the court to tell the jury, in effect, that, before they could find for the appellee, they must find that Johnson had authority to, and did, represent the bank, and did borrow the money from the appellee for the bank, as alleged in her complaint. The instruction in this respect was fully covered by instructions Nos. 2 and 3, which the court gave at the

instance of the appellant. These instructions were really more favorable to the appellant than it was entitled to, for the reason, as we have already seen, that, if the bank received the appellee's money, as the testimony tended to prove, under a promise by Johnson to pay 10 per cent. for same, then it was wholly immaterial whether Johnson had authority to represent the bank or not, for, by cashing the check and receiving the appellee's money, the bank ratified Johnson's unauthorized act, and would be bound by the alleged contract under which the money was obtained.

3. The court, in its instruction No. 2 given at the request of the appellee, in effect put the burden of proof upon the appellant to show that the appellee received and accepted the note executed by the Johnsons to the bank and the appellee, with the agreement and understanding between the appellee and appellant to release the appellant from liability; that, unless the appellant made such proof by a preponderance of the evidence, the jury should return a verdict in favor of the appellee. The appellant contends that this instruction was erroneous because it was abstract, and that the court should have declared, as a matter of law, under the undisputed evidence, that appellee had waived her claim against the bank by accepting and keeping this note. Learned counsel for appellant say, "Her acceptance of this note, not signed by the bank, but by Johnson and his brother, and taking it away and keeping it, was certainly a waiver of any claim or pretended claim against the bank for it."

We do not agree with counsel in this contention. It was an issue for the jury, under the evidence, to determine whether or not the appellee, by her conduct, waived the liability of the bank to her for the money obtained by it from her by accepting and holding the note of the Johnsons. This was a defense. The court correctly put the burden upon the appellant to establish the fact that appellee accepted the note, and that she did so upon the understanding and agreement with the appellant that the latter was released from its obligation to pay the

loan which it had obtained from the appellee. If the appellant borrowed the money from the appellee, as the jury might have found, then the mere taking or acceptance of the note of the Johnsons, executed to the appellant and the appellee, would not relieve the appellant of its liability to the appellee for the debt, in the absence of any understanding or agreement between them to that effect.

The law is well established that, when a creditor receives from his debtor the note or bill of a third party, the presumption is he takes it by way of security. Nevertheless, he may take it in absolute payment, if such is the agreement. *Malpas* v. *Lowenstine,* 46 Ark. 552; *Aikin* v. *Peters,* 45 Ark. 313; see also *Brugman* v. *McGuire,* 32 Ark. 733; *Carlton* v. *Buckner,* 28 Ark. 66; *Costar* v. *Davies,* 8 Ark. 213. Although the appellee received the note of the Johnsons, and accepted the payment of $10 made by Johnson after the institution of this action, yet there is ample testimony to sustain the finding by the jury that there was no contract or agreement between her and the appellant, at the time she received the note, that appellant was to be released from its obligation.

The court correctly submitted the issues of fact in this record to the jury, and there is ample evidence to sustain their verdict on these issues. The judgment is therefore correct, and it is affirmed.