RICE GROWERS' CREDIT CORPORATION *v.* WALKER.

Opinion delivered May 2, 1932.

*M. F. Elms* and *W. A. Leach,* for appellant.

*Ingram & Moher,* for appellee.

HART, C. J., (after stating the facts). The chancery court erred in its finding and decree. The law is well settled that, where a creditor receives from his debtor the note or bill of a third person, the presumption is that he takes it by way of security. *Bank of Hatfield* v. *Bruce,* 164 Ark. 576, 262 S. W. 665; *Hume* v. *Indiana Nat. Life Ins. Co.,* 155 Ark. 466, 245 S. W. 19.

The record shows that appellant had made advances to appellee with which to make a rice crop and took a mortgage on the crop to secure the payment of the indebtedness. Appellee sold the crop and delivered to appellant an instrument called a trade acceptance on McGill Brothers for $4,920.89. The acceptance appears on the face of the instrument, but the amount was not paid because, before it became due, McGill Brothers, on whom it was drawn, became insolvent. According to the evidence of appellant, the draft or trade acceptance upon

McGill Brothers was not received by it as an absolute payment. The source of payment provided having proved unproductive, appellant had the same recourse upon appellee as it had in the beginning. There is no evidence that appellant intended to release appellee. The draft or trade acceptance upon McGill Brothers and their acceptance were equivalent in legal effect to the receipt by appellant of a bill or note of McGill Brothers drawn to the order of appellant.

In *Akin & Company* v. *Peters,* 45 Ark. 313, it was held that the acceptance by a creditor of the note or bill of a third party for his debtor's debt does not discharge the debtor, unless so specially agreed by the party. In discussing the question the court said *"Prima facie* such an instrument is conditional, not absolute payment. It operates only as a collateral security. It does not take the place of the debt, but is placed in the hands of the creditor to make him safe. And, in the event of the nonpayment of the security, the debtor remains liable for his own debt. If the transaction has any greater efficacy—as of course it may have by special agreement of the parties—it is for the debtor to show it. Extinguishment of his own debt does not follow as a consequence, unless that was a part of the contract."

It is also insisted that the draft was not presented when due and notice given of the nonpayment within the time prescribed by our Negotiable Instruments Act. The draft was accepted for payment by McGill Brothers on May 11, 1931. The manager of the Rice Growers' Credit Corporation took the draft to St. Louis with him and offered to deposit it with its bank, the Intermediate Credit Bank of St. Louis, with which it did business. The bank refused to accept the draft as a deposit, but stated that they had better leave the draft with the bank for collection. This was done.

On the back of the draft we find the following indorsements—C. A. Walker, R. B. Westbrook, Rice Growers' Credit Corporation, by R. B. Westbrook, Sec'y; Pay to the order of People's Nat. Bank of Stuttgart, Ark-

ansas; for collection and remittance Federal Intermediate Credit Bank of St. Louis, Mo., by Wood Netherland.

The draft was protested for nonpayment on May 13, 1931. The protest notice was mailed to C. A. Walker at Stuttgart, Arkansas, which was his postoffice address. The postmark shows May 14, 1931.

A check must be presented for payment within a reasonable time, the question of what is a reasonable time depending upon the circumstances of the particular case. *Federal Land Bank of St. Louis* v. *Goodman,* 173 Ark. 489, 292 S. W. 659; *George H. McFadden Brothers' Agency* v. *Keesee,* 179 Ark. 510, 16 S. W. (2d) 994; and *Board of Directors of St. Francis Levee District* v. *Hagan,* 180 Ark. 33, 20 S. W. (2d) 314.

The draft was presented within a reasonable time under the circumstances of this case by the bank at St. Louis with which it was left for collection. The draft was duly protested on the 13th day of May, 1931, and the postmark of the protest notice was May 14, 1931. The postoffice address of C. A. Walker was Stuttgart, Arkansas, where the draft was protested and where the protest notice was mailed. This was sufficient notice of dishonor under our statute. Crawford & Moses' Digest, § 7869.

In the application of these well-settled principles of law, it follows that the court erred in dismissing the appellant's complaint. Therefore the decree will be reversed, and the cause remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion. It is so ordered.