STARLING *v.* HAMNER.

4—2557

Opinion delivered May 23, 1932.

*Marsh, McKay & Marlin,* for appellant.

*Henry Moore, Jr.,* for appellee.

SMITH, J. Without reciting or reviewing the conflicting testimony appearing in the record in this case, we announce our conclusion to be that the preponderance of this testimony establishes the following facts:

J. W. Starling was engaged in farming a tract of land which he had contracted to buy, and the title to which was involved in a suit argued and submitted on the same date on which the instant case was submitted in this court.

The Hamner-Edwards Company, hereinafter referred to as the company, made advances to Starling to enable Starling to cultivate the land, and these advances were secured by a chattel mortgage on Starling's mules and a horse, upon his farming tools and implements, and upon all the crops grown on the farm.

On March 7, 1930, a settlement was had of the farming accounts, and it was agreed that the balance then due was $2,189.06. To secure this balance, a note was executed to cover, not only the balance, but the anticipated advances for the year 1931. The note thus executed was for the sum of $4,500, and bore interest at the rate of ten per cent. per annum from date until paid. It appears, however, that the true intention of the parties was that the mortgage should cover the amount which might be due upon foreclosure of the mortgage, and that the note was executed in order that the company might use it as collateral in securing advances made to it, and not to otherwise evidence the debt. This was in accordance with the custom under which they had previously operated.

The company was engaged in the general furnishing business, and it was contemplated that the advances should consist principally of supplies sold Starling at the company's store, although advances in money were made during the year 1931 slightly in excess of $700. Monthly statements were furnished to Starling of all advances. Goods were sold and charged at cash prices, and, on August 1st, a full and final settlement of the account was rendered, to which there was added 10 per cent. of the total "for time," as that item appeared on the account. This 10 per cent. charge was made only at that time. This addition was made to the cash advanced as well as to the price of the goods sold, and was the method employed to increase the credit prices 10 per cent. above the cash prices. The correctness of this account does not appear to have been questioned by Starling.

On January 2, 1931, Starling died. He was survived by his widow and certain children begotten by her. He was also survived by certain children by a former marriage. Starling's affairs were badly involved, and litigation was threatened between the widow and her children and Starling's children by his former marriage.

An appeal was made by Mrs. Starling to M. M. Hamner for advice and assistance. M. M. Hamner was not connected with the company, although the senior member of that firm was his relative, and M. M. Hamner had sold the farm to Starling, which the latter operated.

M. M. Hamner interceded for Mrs. Starling and made an agreement with the company by which its debt secured by the chattel mortgage was to be reduced to $2,500, which was to be paid in the following manner: Starling had left certain life insurance payable to his widow. M. M. Hamner agreed to pay the company $1,000, and pursuant to that agreement paid the company $1,000 in cash, and as security therefor took an assignment of the chattel mortgage and the debt which it secured to himself. The balance of $1,500 was to be paid by Mrs. Starling when she collected her insurance, and the insurance was collected, but Mrs. Starling declined to per-

form her agreement, which had been evidenced by a written memorandum thereof. She refused to comply with this agreement by paying the $1,500 which she had promised to pay, and, upon her cross-examination as a witness, declined to state why she did not do so. We think it fairly inferable from the testimony to say that two reasons induced this decision: The first was that she had adjusted her differences with her stepchildren, but the principal reason was that the mortgaged property was not worth the money which she had obligated herself to pay.

Although the company's mortgage and the debt which it secured were assigned to M. M. Hamner, we think there was no intention on his part to foreclose it until after Mrs. Starling refused to perform her contract. The mules were in thin order, and Mrs. Starling had no feed for them, and they were collected and turned over to M. M. Hamner with Mrs. Starling's consent. There was nothing to do with these mules but to feed them until farming operations began.

Upon the advice of M. M. Hamner, Mrs. Starling qualified on March 3, 1931, as administratrix of her husband's estate, and she approved the claim of Hamner against her husband's estate, and it was allowed and classed by the probate court. However, an appeal was later prosecuted from this probate order, which appears to be pending and undisposed of in the circuit court.

On March 24, 1931, (at which time Mrs. Starling had definitely declined to perform her contract by paying the $1,500 out of the insurance money which she had then collected) this suit was filed by M. M. Hamner to foreclose the mortgage which had been assigned to him. The company, as assignor of the debt and the mortgage securing it, was made a co-plaintiff.

The chancellor found that the debt secured by the mortgage at the time of the rendition of the decree from which this appeal comes was only $3,700. Just how this amount was arrived at is not clear, unless the court struck out of the account the charge for cash money ad-

vanced. Upon this finding it was decreed that "M. M. Hamner do have and recover of, from and against the property above mentioned (in the mortgage) the sum of $3,700 * * *," and that the lien of M. M. Hamner against said property "was superior and paramount to any rights of any of the other parties hereto." No personal judgment was rendered against any one, and the sale of this mortgaged property was ordered. Pursuant to this order of sale, the mortgaged property was later sold by the commissioner appointed to make the sale for $700.

Various defenses were interposed to this foreclosure suit, which we now proceed to discuss.

It is insisted that the mortgage, if otherwise valid, could not be held as security for any amount in excess of $2,500, the consideration for its assignment which M. M. Hamner assumed and agreed to pay. This would be true if Mrs. Starling had performed her agreement in regard to its transfer. But she did not do so.

If Mrs. Starling's written agreement in regard to the assignment of the mortgage be treated as an obligation on her part to pay $2,500, she did not pay it. On the contrary, she repudiated that obligation and refused to perform it. Treating this obligation as a promise to pay, or even as a promissory note, did not enlarge her rights. It is settled law that giving a promissory note for a debt is not a payment of the debt unless, by agreement of the parties, the note is taken in payment of the debt. This is true even of a note executed by a third party. *Bank of Hatfield* v. *Bruce,* 164 Ark. 576, 262 S. W. 665; *Hume* v. *Indiana Life Ins. Co.,* 155 Ark. 466, 245 S. W. 19, and cases there cited. The contract between Mrs. Starling and M. M. Hamner for the ultimate assignment of this mortgage to her for a consideration of $2,500 was, in effect, annulled by her refusal to perform the contract entitling her to the benefit of the reduction in the debt, and M. M. Hamner was, and is, as the court below decreed, the legal holder of the mortgage and the debt which it secures.

It is unimportant whether M. M. Hamner has paid to the company all of the $2,500 or not. He is obligated to do so, and his assignor, the company, was a party to the foreclosure proceeding and made no question as to M. M. Hamner's ownership of the mortgage, and the company is bound by the finding of the court that M. M. Hamner is in fact the owner of the mortgage.

It is insisted that M. M. Hamner converted the mortgaged property to his own use without foreclosing the mortgage, and thereby became liable for its actual market value at the time of the conversion, and should be charged with this value. It may be said that the testimony is in irreconcilable conflict as to the value of the mortgaged property, but the fact remains that when sold by the commissioner under the foreclosure decree the mortgaged property brought only $700.

We do not, however, pass upon the question of the actual market value of the mortgaged property, for the reason that we do not find, nor did the court below find, that there had been any conversion of it. The testimony established the fact that, after making his agreement with Mrs. Starling, Hamner took possession of the mortgaged property, but, as default had been made in the payment of the debt secured by the mortgage, he had the right to do so. *Thornton* v. *Findley*, 97 Ark. 434, 134 S. W. 627; 33 L. R. A. (N. S.) 491; *Lee Wilson & Co.* v. *Crittenden County Bank*, 98 Ark. 384, 135 S. W. 885; *Barron-Fisher-Caudill Co.* v. *Rhoda*, 126 Ark. 556, 191 S. W. 229.

We do not find that Hamner took possession of the mortgaged property as the owner thereof. There is but little question that Hamner would have turned the mortgaged property over to Mrs. Starling had she complied with her contract.

One of the items of the mortgaged property to which testimony was especially directed was that of the cottonseed which Starling had on hand at the time of his death, and this testimony confirms our view that there was no conversion. After the date of the alleged conversion, an

agreement was reached between Hamner and Mrs. Starling's representative that Hamner should use the seed and pay fifty cents per bushel for them, which appears to have been a most reasonable allowance on that account. It is true that Hamner took possession of the mortgaged property on February 10, 1931, but, as we have said, this was for the purpose of taking care of it, and not for converting it to his own use. Indeed, at that time Hamner was expecting Mrs. Starling to comply with her original contract and would, no doubt, have delivered the property to her, had she performed this contract by paying the $1,500 as agreed.

It is also insisted that the debt was usurious and void for that reason, and that the usury consisted in taking the note above mentioned. But we do not agree with this contention. The monthly statements furnished Starling in his lifetime, and the testimony in the case, show conclusively that the note was only an estimate of what the account would finally be, and was in the nature of an accommodation note which the company might use as collateral, and that it was at all times the intention of all the parties that the final indebtedness would be determined from statements of the account.

The 10 per cent. addition to the account was dated on August 1st, at which time the crops had been "laid by," and the advances ceased and the credit items would thereafter be in excess of the debit items. There could be, and was, no usury in adding 10 per cent. to the cash price of goods which were not sold for cash, but on credit. *Brakefield* v. *Halpern,* 55 Ark. 266, 15 S. W. 190; *Blake Bros.* v. *Askew & Brummett,* 112 Ark. 514, 166 S. W. 965; *Standard Motors Finance Corporation* v. *Mitchell Auto Co.,* 173 Ark. 879, 293 S. W. 1026, 57 A. L. R. 877.

The foreclosure suit was based upon the account, and not upon the note, but, if the note were held to be usurious, this would not affect that portion of the account incurred for goods purchased, and would invalidate only such portions of the account as were based upon the loan of money. Usury cannot be predicated upon the charge

of a profit of more than 10 per cent. for goods sold on credit. *Atkinson* v. *Burt,* 65 Ark. 316, 53 S. W. 404; *Tillman* v. *Thatcher,* 56 Ark. 315, 19 S. W. 968; *Briggs* v. *Steel,* 91 Ark. 458, 121 S. W. 754.

The account, on August 1, 1931, amounted to $4,687.73, and the decree, rendered December 29, 1931, found the indebtedness secured by the mortgage to be $3,700. The difference between these items is $987.73, which is greater than the money advanced and the price of the cottonseed combined, so that, if the note were usurious, the judgment is for a sum no greater than the balance due, exclusive of the money advanced (the only items against which the plea of usury could be asserted), and that of the seed also. To constitute usury, there must be an agreement requiring the borrower to pay, and entitling the lender to receive, a higher rate of interest than that allowed by statute for the loan or forbearance of money, and the plea of usury cannot therefore be sustained. *Cheairs* v. *McDermott Motor Co.,* 175 Ark. 1126, 2 S. W. (2d) 1111.

The decree appears to accord with the preponderance of the testimony, and it must therefore be affirmed, and it is so ordered.