FEDERAL LAND BANK OF ST. LOUIS v. GOODMAN.

Opinion delivered April 4, 1927.

1. BILLS AND NOTES—TIME FOR PRESENTING CHECK.—In the absence of special circumstances excusing delay, where the payee of a check and the bank on which it is drawn are in the same place, reasonable diligence requires the check to be presented for payment not later than the day after it is received, and delay beyond that time without excuse will discharge the drawer from liability if he is injured by the delay.

2. BILLS AND NOTES—TIME FOR PRESENTING CHECK.—A check must be presented for payment within a reasonable time; the question what is a reasonable time depending on the circumstances of the particular case.

3. BILLS AND NOTES—PRESENTATION OF CHECK—REASONABLE TIME.— What constitutes "reasonable time" for presenting a check for payment depends on the circumstances of the particular case, and means such time as a prudent man would exercise or employ about his own affairs.

4. BILLS AND NOTES—TIME FOR PRESENTING CHECK.—One residing in Memphis, Tenn., who received exchange drawn on a Memphis bank on Friday after banking hours, acted within a reasonable time in depositing the exchange with another local bank on Saturday following, the exchange being presented to the drawee bank on the following Monday morning.

5. MORTGAGES—PLACE OF PAYMENT.—A mortgagee residing in Memphis, Tenn., is not concluded by his refusal to accept payment tendered in Arkansas when the contract required payment to be made in Memphis.

6. MORTGAGES—CANCELLATION OF RELEASE.—Where a deed of release of a mortgage was executed and recorded under mistaken belief that the debt had been paid, and the mortgagee, immediately upon discovery of that fact, placed on the margin of the record a statement that the release was canceled, he is *held* to have acted with due diligence.

7. BANKS AND BANKING—PAYMENT—WHAT LAW GOVERNS.—Whether a drawee bank, which had on deposit money of the drawer,

could refuse payment of exchange on the drawer bank's insolvency, on the ground that the drawer bank was indebted to the drawee ·on unmatured notes, was for determination under the law of the place of payment.

Appeal from Crittenden Chancery Court; *J. M. Futrell,* Chancellor; affirmed.

*J. R. Crocker* and *R. V. Wheeler,* for appellant.

*Davis & Costen,* for appellee.

MEHAFFY, J.   Appellee began suit in the Crittenden Chancery Court, and, on October 19, 1925, the court rendered its judgment in favor of appellee and against the appellants. Tommie Hollowell was the owner of a tract of land, and he executed note and mortgage to Abe Goodman, trustee, of Memphis, Tennessee, for $827. Hollowell applied for a loan from the Federal Land Bank of St. Louis, pledging the same land as security for payment of the loan. The application was made through the Tri-County National Farm Loan Association, and James C. Moore was secretary and treasurer of this association, and he was also the active vice-president of the Bank of Commerce of Earle, Arkansas. George F. Scott was an abstracter, and was assistant to Moore as secretary and treasurer of the National Farm Loan Association. Hollowell's application for loan was approved, and, on November 1, 1924, a note and mortgage were executed by Hollowell and his wife in favor of the Federal Land Bank of St. Louis. The mortgage was duly recorded in Crittenden County, Arkansas.

The Federal Land Bank of St. Louis issued its check for the sum of $938.75, mailed said check to J. C. Moore, as secretary and treasurer, and to the borrower. It was given to pay the debt due to Abe Goodman.

Moore received the check November 19, and credited the amount on the books of the Bank of Commerce to Tommie Hollowell and issued exchange of the Bank of Commerce, drawn upon the First National Bank of Memphis, Tennessee, in favor of Abe Goodman, for $827.

Moore delivered the exchange to Scott for the purpose of delivery to Goodman, in satisfaction of the lien

held by Goodman. On the 22d day of November Scott wrote to Goodman, asking him to execute and send to the Bank of Marion, Arkansas; the release which he inclosed in that letter, and, upon presentation, he would pay the bank the amount due.

Goodman wrote Scott, declining to send the release, as the notes were made payable in Memphis, and stated that, if they would have their bank instruct their correspondent here to pay him the amount stated, he would deliver them the notes, marked paid, and also execute the quitclaim deed Scott inclosed.

Scott went to Goodman's office in Memphis, Tennessee, Friday afternoon, November 28, 1924, after the Memphis banks were closed for the day, arriving between three and four o'clock. There was some testimony that he arrived there and delivered the exchange to Goodman between 1:30 and 2 P. M. on the 28th.

Scott, who delivered the deed, was dead at the time of trial. Goodman executed the release deed upon delivery to him of the exchange. The Bank of Commerce of Earle was open for business during the banking hours of Saturday, November 29, but did not open for business Monday morning.

Goodman, after receiving the exchange on the 28th, having received it too late to deposit it, put it in his safe, and, on Saturday morning, the 29th of November, deposited it in the Bank of Commerce & Trust Company, at Memphis, Tennessee.

Memphis, Tennessee, has a clearing-house association, and the exchange was presented to the First National Bank, through the clearing-house, on Monday morning, December 1, 1924, and payment refused because the Bank of Earle was reported closed.

Goodman's office in Memphis is within forty feet of the First National Bank. The release deed executed by Goodman was placed on record in Crittenden County immediately, having been filed for record the same day it was executed, November 28, 1924, at 4 o'clock P. M.

The Bank of Commerce of Earle had on deposit to its credit in the First National Bank of Memphis, on December 1, subject to check, over $6,000, but the Bank of Earle was indebted to the First National Bank in the form of notes not matured. When the exchange was returned unpaid, Goodman placed on the margin of the record of the release deed a statement that it was erroneously given and without consideration, and canceled the release deed, certifying that it was void. This was done on December 19.

Appellee's complaint set up the facts which are in substance outlined above, and the Federal Land Bank answered, and stated that the advance was made, secured by a mortgage upon the faith of a release deed, and that plaintiff, by his own negligence, failed to collect the exchange, as the same would have been paid to Goodman on either the day of its receipt or the following day. It filed a cross-complaint against the First National Bank of Memphis and the original plaintiffs, Bank of Commerce of Earle, and Loid Rainwater, Bank Commissioner.

The Bank Commissioner entered his appearance, but no service appears upon any of the other cross-defendants. The answer of the appellants also denied the allegations in plaintiff's-complaint.

The chancellor found in favor of appellees against the appellants and others in the sum of $811.59 and interest, and decreed that the release deed executed by Goodman should be canceled and set aside; dismissed the cross-complaint of the Hollowells, held that the deed from the Hollowells to the Federal Land Bank was valid, but was subject to the first deed in favor of Goodman, and ordered the sale of the land to pay Goodman's judgment.

The appellant contends, first, that, if the holder of a check and the bank on which it is drawn reside in the same place, the check must be presented for payment not later than the day after its receipt. This presents the only real controversy in the case. The authorities cited by appellant, while announcing this rule, state that it is not absolute, and that the holder of a check must use due

diligence in the presenting of a check for payment. The authorities cited also hold that, if a bank fails after the holder, using due diligence, could have gotten the money on the check, the loss is his. Both parties agree that this question should be determined or decided under the laws of the State of Tennessee. The law with reference to this matter in the State of Tennessee is the same, however, as the Arkansas statute, and both statutes provide, in substance, that a check must be presented within a reasonable time after its issue.

One of the cases relied on by appellant in discussing this question is an Arkansas case, and the court said in that case: "In the absence of special circumstances excusing delay, the reasonable time for presenting a check, where the person receiving the same and the bank on which it is drawn are in the same place, is not later than the next business day after it is received; and, where they are in different places, reasonable diligence requires the check to be forwarded to the place of payment not later than the next business day after it is received by the payee, and presented not later than the day after it is there received. Inexcusable delay will discharge the drawer from liability if he is injured by the delay."

But the court also said in the same case: "A check, like a bill of exchange, must be presented for payment within a reasonable time, and what is a reasonable time will depend upon the circumstances of each particular case." *Burns* v. *Yocum*, 81 Ark. 127, 98 S. W. 956.

The above case was decided in 1906, before we had any uniform negotiable instrument law in Arkansas. The court in that case, however, as we have said, recognized the rule that all that was required of the holder of the check was to present it in a reasonable time, and that a reasonable time depended upon the circumstances of each particular case. It may be said that what is a reasonable time in any case depends on the circumstances of that particular case, and means such time as a prudent man would exercise or employ about his own affairs. It, of course,

does not mean indulgence in unnecessary delay on the one hand nor does it mean that he is to act without any regard to the circumstances and convenience of transacting business of that kind. It is whatever time is necessary to conveniently do what should be done in the particular case. It has been said that it means such length of time as may fairly, properly and reasonably be allowed or required, having regard to the nature of the act or duty and to the attending circumstances.

Since the establishment of clearing-house associations, and especially in cities as large as Memphis, it would be very inconvenient, if not practically impossible, for each person who received a check drawn on a bank in Memphis to present it to the particular bank upon which it was drawn. It would very greatly interfere with business, and due diligence does not require this.

It has been said: "The usage of trade and business in presenting checks for payment has been incorporated in the banking business of the State and country, and would be seriously affected if immediate payment to the bank was required. Bearing in mind the general commercial law, that the paying bank is required to satisfactorily identify the payee, * * * and bearing in mind also the vast number of checks daily used in the city of New York, it is apparent that, if the banks and trust companies of New York were required, immediately upon their receipt, to present deposited checks to banks upon which they are drawn in payment, confusion amounting almost to chaos would be the result. * * * A rule which required all the banks in the city of New York to present for payment all the checks deposited by their customers on the day of their deposit would compel them to decline business of that character and defeat the objects, in many cases, for which deposits are made, and put an end to certain facilities which result from obtaining credit for the amount of a check for the day of its deposit, without providing for its payment until the following morning."

The court further said: "I have not overlooked the cases which hold that a check on a bank in a city in which

the payee resides must be presented for payment not later than the day following its receipt. These cases may be distinguished from the case under review. The facts and circumstances in each must, in a great degree, govern the rule to be applied, and the facts in those cases differ materially from those of the present case.'' *Zaloom* v. *Ganim,* 72 Misc. Rep. 36, 129 N. Y. S., p. 85.

What is said about the business of New York is also true of Memphis, Tennessee, except in a different degree, but it would certainly be very inconvenient and a great interference with business as it is conducted today to require one to go to the bank on which the check was drawn, instead of depositing it as the appellee did in this case. As said by the New York court, it would 'create confusion and, in many instances, defeat the very purpose for which deposits are made, and we do not think any such conduct is required by law, and we therefore conclude that, in this case, the appellee deposited the check within a reasonable time.

Appellant next insists that the effect of the refusal to accept payment, when tendered, bars recovery. We do not agree with appellant in this contention. The facts are that appellee had a letter from one Scott, whom he did not know, as far as this record shows, but, even if he did, and if it had been from the debtor himself, it did not amount to a legal tender, and the appellee simply called his attention to the terms of the contract, which required payment in Memphis, and practically all the delay thereafter was caused, not by appellee, but by the agents of appellant. The appellee executed the release deed, of course, believing that the exchange was good, but, as soon as he found out that it was not, he put on the record the cancellation, and we think, from the proof in this case, that the appellee acted with reasonable diligence throughout the transactions connected with this case.

As to appellant's contention that the Memphis bank had no right to refuse to pay, that is also a question to be decided under the Tennessee law, and it seems to be the settled law that the bank had the right to refuse to pay.

although the Bank of Earle had money on deposit there, because the Bank of Earle was indebted to the Memphis bank. As we stated in the outset, the main question in the case seems to be whether the appellee presented the check for payment in a reasonable time, under the circumstances, and our conclusion is that he did, and the decree of the chancellor is affirmed.