FLETCHER *v.* RAY.

4-9927                                250 S. W. 2d 734

Opinion delivered July 7, 1952.

*E. M. Arnold,* for appellant.

*John D. Thweatt* and *Cooper Thweatt,* for appellee.

ROBINSON, J. On the morning of April 30, 1952, the 90th day before the preferential primary election, appellee Gunter sent his signed check in payment of his ballot fee as a candidate for the office of State Senator to J. H. Coleman, Secretary of the Lonoke County Democratic Central Committee. The amount of the check, which was drawn on the Bank of Cabot, was left blank. The ballot fee for position No. 1 had been fixed by the Committee at a total sum of $200. Appellant Fletcher also filed for position No. 1 and gave to the Secretary of the Committee his signed check with the amount left blank. When the ticket closed at noon on the 90th day before the election and there were no further candidates for the office, the Secretary of the Committee filled in the amount of $100 on each check.

Gunter's check was deposited five days later—the exact date it reached the Bank upon which it was drawn is not clear, but it was about the 5th, 6th or 7th of the month. The check was dishonored and returned to the Secretary of the Committee because of insufficient funds. Gunter had sufficient funds in the Bank to have paid the check up to May 5th, but on that date the Bank paid another check drawn on his account on May 4th, leaving insufficient funds in Gunter's account to pay the check he had previously given for his ballot fee. Gunter claims the Bank had credited to the wrong account a deposit he had made in April, but the Bank denies making any mistake about the deposit.

Upon receipt from the Bank of Gunter's dishonored check, the Secretary of the Committee demanded of appellant Fletcher an additional $100 on the theory that appellee Gunter had not paid the ballot fee and had not qualified, and, therefore, Fletcher would have to pay the entire fee fixed by the Committee for position No. 1. Fletcher paid the additional $100 as requested. Gunter was notified his check had been dishonored and he immediately tendered to the Secretary of the Committee $100 in cash, which was tentatively accepted. Later, the Committee met and, by a majority vote, agreed to accept the cash payment from Gunter for his ballot fee. Fletcher

filed suit to enjoin the Committee from placing Gunter's name on the ballot. Gunter filed an intervention. The Court refused to issue the injunction and Fletcher has appealed.

Appellant Fletcher relies on the proposition that, since the check given by Gunter in payment of his ballot fee was not honored by the Bank upon which it was drawn, and since the time fixed by Statute in which the fee must be paid had expired before the payment in cash, the Committee had no authority to accept the cash payment and put Gunter's name on the ballot.

Gunter contends that: (1) the giving of the check in itself constituted payment regardless of the fact that it was not honored by the Bank; (2) the cash payment should be considered made as of the time of the giving of the check; (3) there was an unreasonable delay on the part of the Committee in presenting the check to the Bank for payment, and, therefore, the check should be considered as payment; (4) appellee Gunter was discharged by failure of the Committee to give notice of dishonor of the check within a reasonable time; (5) if it should be held that Gunter failed to pay his fee within the time fixed by law, then Fletcher is in the same position and neither should have his name placed on the ballot.

Ark. Stats., § 3-205, provides: "All candidates for United States Senator, Representative in Congress and all State and district offices shall file any such pledge required with the Secretary of the State Committee not later than 12 o'clock noon on the ninetieth day before the election and shall pay on or before the ninetieth day before the election such ballot fees as may be required by said party; that all candidates for county and township offices shall file any such pledge required with the Secretary of the County Committee not later than 12 o'clock noon on the ninetieth day before said election and shall pay the ballot fees prescribed for said office not later than the ninetieth day before said election."

Ark. Stats., § 3-206 provides: "The name of any candidate who shall fail to file any pledge that may be

required as provided for in section 1 hereof (§ 3-205), or who shall fail to pay the ballot fees within the time required as provided by section 1 hereof, shall not appear on the official ballot in said primary election. The chairman and Secretary of the State Committee of any such political party shall certify to the various county committees of any such political party not later than thirty days before said primary election the names of all candidates who have complied with the rules herein prescribed, and the name of no other candidate for such office shall be printed on the ballots by the County Committee.''

The giving of the check in itself did not constitute payment. *Sharp* v. *E. Nathan Mercantile Co.*, 75 Ark. 556, 88 S. W. 305; *Rose* v. *Lilly*, 170 S. W. 483; *Churchill* v. *Yeatman-Gray Gro. Co.*, 111 Ark. 529, 164 S. W. 283.

''With the exception of a few jurisdictions, the authorities are unanimous in supporting the rule that the giving of a draft or bank check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the draft or check is accepted on condition that it shall be paid.'' 40 Am. Jur. 763.

In the case at bar the Statute provides as to when the fee shall be paid and it is doubtful that the Committee could extend the time by accepting a check as payment when the check is, as a matter of fact, no good. But, be that as it may, the preponderance of the evidence here is that the check was not unconditionally accepted as payment. The Secretary of the Committee so testified and there is no substantial evidence to the contrary. When a check is taken in payment of a debt, the debt is considered paid as of the date of the receipt of the check provided the check is paid in due course.

In 70 C. J. S., 234-5-6, it is stated: ''The original debt is not paid or discharged unless, and until, the check itself is actually paid on due presentment, or, it is some-

times stated, until it is honored or accepted by the drawee; . . .

   "On the other hand, where a check delivered to a creditor, although without any agreement or consent on his part to receive it as absolute payment, is in fact paid in due course, the debt is discharged *pro tanto,* as of the time at which the check was received; but a payment other than in due course does not extinguish the debt. A check is accordingly often referred to as conditional payment, the condition being its collectability from the bank on which it is drawn. On fulfillment of the condition by payment of the check on presentation, the payment, which was previously conditional, becomes absolute." In the case at bar the check was dishonored. Therefore, the ballot fee was not paid by a check of any date.

Next, Gunter says that cash payment should be considered made on April 30th because he paid the cash immediately upon being notified that the check had been dishonored. However, the rule, as above stated, is that the payment is considered made on the date of the receipt of the check only when the check is paid in due course.

As his third contention, Gunter asserts that the check should be considered as payment because there was an unreasonable delay on the part of the Committee in presenting the check to the Bank. The check was given on April 30th, the last date the ballot fee could be paid legally. The Committee did not present the check for collection until May 5th. Can it be said that there was such an unreasonable delay in presenting the check for payment that the appellee is discharged of the debt? We think the answer must be in the negative.

Gunter cites the case of *Burns* v. *Yocum,* 81 Ark. 127, 98 S. W. 956. That case was decided prior to the adoption of the Uniform Negotiable Instrument law in this State. Furthermore, the Burns case was dealing with a situation where there was a bank failure and the undisputed evidence was that the depositor had on deposit sufficient funds to pay the check and that the check

was deposited by the payee who received a deposit slip prior to the time the bank closed its doors.

The rule is that all which is required of the holder of the check is to present it within a reasonable time, and that means such time as a prudent man would exercise or employ about his own affairs. *Fed. Land Bank of St. Louis* v. *Goodman,* 173 Ark. 489, 292 S. W. 659.

Gunter also cites *George H. McFadden Bros. Agency* v. *Keesee,* 179 Ark. 510, 16 S. W. 2d 994; *Rice Growers Credit Corporation* v. *Walker,* 185 Ark. 886, 50 S. W. 2d 619; *Jett Bros. Stores* v. *McCullough,* 188 Ark. 1108, 69 S. W. 2d 683. All of these cases, with the exception of *Rice Growers Credit Corporation* v. *Walker* which involved the acceptance of a draft, deal with a situation where the bank failed between the time the check was delivered and the time it reached the bank. The bank failure cases are not in point for the reason that there is a distinction between that kind of case and one where a depositor withdraws his funds from the bank. The weight of authority is that there is no payment when the drawer of the check withdraws his funds from the bank before payee presents the check for payment. When a person gives a check which is good at the time, but withdraws his funds from the bank before the check is presented some 5 or 6 days later, he is not in the same category as one who gives a check which is not paid 5 or 6 days later because of a bank failure.

In the case of *Bodner* v. *Rotman,* 95 N. J. Eq. 510, 123 A. 529, the court said: "Section 186 of the Negotiable Instrument Act provides that a check must be presented for payment within a reasonable time after its issue or drawer will be discharged from liability thereon to the extent of the loss caused by the delay. It is true that neglect to present a check for 20 days after its receipt will probably be called an unreasonable delay, but, in this instance, when the check was presented, it was returned for lack of funds, and the delay in presenting the check would have worked no injury to the defendant had he allowed funds to meet it to remain in the bank until its presentment."

It was held in *Lester-Whitney Shoe Co.* v. *Oliver,* 1 Ga. App. 244, 58 S. E. 212: ''The burden of showing that there were funds on hand to meet the check was upon the drawer of the check, and if he does not show that there are funds subject to his check at all times after the making of the check, or some other arrangement by which payment of his check is guaranteed at any time the payee may desire to present it, he cannot claim damage against a holder for unreasonable delay in presentation.''

In *First National Bank* v. *Linn County National Bank,* 30 Or. 296, 47 Pac. 614, the court said: ''The holder's laches in presenting a check for payment constitutes no defense in an action against drawer unless he is damaged by the delay and then only to the extent of his loss. A check purports to be made upon a deposit to meet it, and presupposes funds of the drawer in the hands of the drawee. But if the drawer has no such funds at the time of the drawing his check, or subsequently withdraws them, he commits fraud upon the payee, and can suffer no loss or damage from the holder's delay in respect to presentment or notice.''

Next, Gunter says the ballot fee should be considered to have been paid by the check because the Committee received notice on May 8th that the check had been dishonored and did not notify him until May 16th, and cites Ark. Stats., § 68-220, which provides: ''Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each endorser and any drawer and endorser to whom such notice is not given is discharged.'' But § 68-245 provides that notice of dishonor is not required to be given to the drawer where the drawer has no right to expect or require that the drawee or acceptor will honor the instrument.''

Lastly, Gunter asserts that should it be held that he did not pay the ballot fee in the required time, Fletcher is in the same position, since Fletcher paid the second $100 requested by the Committee after the deadline of

12 o'clock noon on the 90th day before the election. The law does not fix the amount of the ballot fee—that is the duty of the Committee. A candidate must depend on the information he gets from the Committee as to the amount of the fee. Here, Fletcher was told that the fee was $100—in fact, the Secretary of the Committee filled out Fletcher's check for that amount. Later, the Committee determined that Fletcher should pay an additional $100 because Gunter's check had been dishonored, leaving only one candidate for position No. 1. Upon request Fletcher paid the additional $100. Whether he could have been compelled to make this payment is immaterial. The point is that within the prescribed time he paid all the Committee asked as his ballot fee, and therefore is a qualified candidate.

As to Gunter, it is the conclusion of the majority, with which the writer does not agree, that since there were not sufficient funds in his bank account to pay the check given in payment of his ballot fee when the check was presented to the Bank, the check did not constitute payment, and since the cash was not paid to the Committee until subsequent to noon on the 90th day preceding the preferential primary election, Gunter's name should not be placed on the ballot.

Reversed with directions to grant the injunction and, for good cause shown, the issuance of an immediate mandate is ordered.

ED. F. McFADDIN, Justice (dissenting). This is a case in which the majority is adopting the ''letter of the law,'' instead of the ''spirit of the law''; and the result is, that the voters will be deprived of deciding which of the two candidates—Fletcher or Gunter—should represent the people of White, Woodruff, Lonoke and Prairie Counties in the Arkansas State Senate. I think the result reached by the Chancery Court is in accordance with the spirit of the law; and that the decree should be affirmed. Here are my reasons for such a conclusion:

Gunter gave a check for the filing fee for Senatorial Position No. 2 in the Democratic Primary. The ticket

closed on April 30th. The Secretary of the Democratic Central Committee of Lonoke County held Gunter's check so long that it did not reach the bank until May 5th. At all times from April 30th to the morning of May 5th, Gunter had sufficient funds on deposit in the bank to cover the check. But when the check was actually presented, he lacked less than $17.00 of then having the required amount. Because the President of the bank was not favorable to Gunter in political matters, Gunter was not notified that he needed $17.00 to make the check good; and the check was returned, marked "Insufficient Funds." Just as soon as Gunter learned that the check had not been paid, he took $100.00 in cash to the Secretary of the Democratic Central Committee of Lonoke County, and the money was tentatively received. Then, the Lonoke Democratic Central Committee held a meeting, and accepted Gunter's explanation as to the unreasonable delay in presenting the check; and the said Committee voted that Gunter's name should be on the ticket. I believe that these facts make a case for Gunter, and that his name should be on the ticket.

Gunter's check was held from April 30th to May 5th. The law is that if a check is held an unreasonable time, then the maker is relieved from loss resulting from such unreasonable holding. Was Gunter's check held an unreasonable time before being presented to the bank? That is a question of fact to be decided in each particular case. In *Parker* v. *Grau*, 188 Ark. 1016, 68 S. W. 2d 1023, Mr. Justice McHaney, speaking for a unanimous Court, said:

"In *Federal Land Bank* v. *Goodman*, 173 Ark. 489, 292 S. W. 659, we held that a check must be presented for payment within a reasonable time after its receipt, and that what constitutes a reasonable time depends upon the circumstances of the particular case,—'such time as a prudent man would exercise or employ about his own affairs.' Section 7763,[1] Crawford & Moses' Digest, provides: 'In determining what is a "reasonable time" or an "unreasonable time," regard is to be had to the nature of the

[1] This is now § 68-504, Ark. Stats.

instrument, the usage of trade of business if any with respect to such instrument, and the facts of the particular case.' "

The foregoing is in accord with the general rule prevailing in other jurisdictions. See 10 C. J. S. 861.

Now, evidently the Democratic Central Committee of Lonoke County thought the check had been held an unreasonable time before presentment, because that Committee authorized the acceptance of Gunter's money and authorized his name to go on the ticket. The Committee thus decided the fact question, and I think it had the right to make that decision. I do not believe the majority of this Court should substitute its own views of the facts for those of the Democratic Central Committee of Lonoke County. The holding of the majority is preventing the electors from deciding between the candidates.

I respectfully dissent, and am authorized to state that Mr. Justice HOLT joins me in the views herein stated.