426

## CONTINENTAL MOSS-GORDIN, Inc. *v.* ZANE G. BEATON

5-4991                                446 S. W. 2d 226

### Opinion delivered October 27, 1969

*Smith, Williams, Friday & Bowen,* for appellant.

*Branch & Adair,* for appellee.

CARLETON HARRIS, Chief Justice. On March 20, 1963, Zane Beaton, appellee herein, and the owner of the Shugtown Gin Company, agreed to purchase from Continental Moss-Gordin, Inc., appellant herein,[1] a machine to be used in ginning operations. The agreed purchase price was $3,200.00, payable as follows: a $1,600.00 down

---

[1]The agreement to purchase was actually with Gordin Unit System, the company later changing its name to Moss-Gordin Company. Subsequently, Moss-Gordin Company merged with the Continental Gin Company, and became known as Continental Moss Gordin, Inc. The accounts receivable were transferred to the company after the merger, the acquisition being completed on September 22, 1964.

payment was to be made when the machine was delivered, and Beaton executed two promissory notes for the remaining balance of $1,600.00, each in the amount of $800.00, the first being due on October 15, 1964, and the second due on December 15, 1964. The two notes were admittedly paid, but on February 17, 1967, appellant instituted suit against appellee for the $1,600.00 down payment, alleging that this payment had never been made, despite repeated demand for same.[2] Beaton answered, denying that he had failed to make the down payment, and a counterclaim was filed, seeking damages in the amount of $4,137.50, appellee asserting that the machine was defective, had never functioned properly, and there was a breach of warranty. At the conclusion of the evidence, appellant moved for a directed verdict, and this was denied as to the complaint, but granted as to appellee's counterclaim. The jury then returned a verdict for appellee on appellant's complaint. From the judgment so entered, the company brings this appeal. Appellee cross-appeals from the action of the court in directing a verdict on its counterclaim.

Ben Harpole, a salesman for appellant company, handled the Beaton sale, and this witness testified that, on June 22, 1963, he took the promissory notes and financing statement to appellee for his signature, and he said that he suggested to Beaton that he (Beaton) could give the down payment at that time, rather than waiting until delivery of the machine. This was not agreeable to Beaton, and Harpole marked through "cash before shipment,"[3] and the requirement was "cash on delivery," meaning that the down payment was to be paid when the machine was delivered.

Beaton testified that he made the $1,600.00 down

---

[2] The complaint sought $1,664.00, the $64.00 representing Louisiana sales tax; this tax evidently was not paid, but the matter is not mentioned in appellant's argument.

[3] The contract listed three methods of settlement, viz., cash with order, cash before shipment, and cash against B/L on delivery. This last was filled in $1,600.00.

payment in June, 1963, at the time of signing the notes, and financing statement:

"* * * I said something about giving him a check, but I didn't know how much rubber it would have in it, and chuckled about it, and my daddy took a check out of his pocketbook and handed it to me and said, 'We might as well pay with this.' I took it and endorsed it on the back and said, 'Ben, I know this is not good business to pay like this, but I know you are not going to steal the check anyway.'"

Beaton testified that he did not remember who had written the check, or the name of the bank, and did not recall whether the check was written to his father, or to the Earl Beaton and Son Gin Company. He said the check was given to Harpole, and the latter accepted it; that subsequently, the machine was delivered,[4] and no demand for down payment was made by the company.

Appellant's entire argument is based on the premise that tender of a check does not constitute payment of a debt, the presumption being that the check is accepted on condition that it will be paid. The company contends that, since appellee offered no evidence that the check was ever paid or honored by any bank or any other drawee, and Beaton admitting that he did not know whether the check was ever paid by any bank, appellant was entitled to a directed verdict. It is true that we have held that the burden of proving that payment was made is on the person asserting such payment. *Blass* v. *Lawhorn*, 64 Ark. 466, 42 S. W. 1068; *Smith* v. *J. M. Taylor and Company*, 144 Ark. 569, 222 S. W. 1062. But that does not mean that the cancelled check, or proof of its existence, must be shown before one can successfully assert that the indebtedness has been paid. Of course, a cancelled check would *establish* the payment—just as a receipt generally (except where one is obtained by fraud or mistake) establishes a payment by cash; certainly,

[4]In August, 1963.

however, it could not be contended that one could not prove payment of an indebtedness because he had lost his receipt. Accordingly, though cancelled checks, receipts, or notes, or obligations marked "paid," are, of course, the best evidence of payment, we know of no requirement that makes this type of evidence mandatory.[5] In fact, in the course of trade, debts are paid every day by third party checks which the payor endorses. If such checks are turned down when presented for payment, they are returned to the payor, who is then required to make the check good. In the case before us, there is no contention that Beaton gave a "bad check;" the contention is, in effect, that he gave no check at all.

If the above were all the proof in the case, appellant might well have a more justifiable complaint on the verdict—but other evidence adduced, clearly, we think, made a case for the jury. For instance, the contract very definitely calls for a $1,600.00 payment on delivery. *If* Beaton did not make this payment, why did the company permit delivery to be made? Further, though this record is not at all clear, it does not appear that any complaint (that the down payment had not been paid) was made to Mr. Beaton for, at least, a long num-

[5]In its brief, appellant states: "It is settled that mere tender of a check does not constitute payment of a debt, the presumption being that the check is accepted on condition that it will be paid. See *Fletcher* v. *Ray*, 220 Ark. 844, 250 S. W. 2d 734, and authorities cited therein." The law is stated correctly. *Fletcher v. Ray, supra*, concerns a check given by a candidate for office which was turned down because of insufficient funds. However, the present transaction is not in the same category as where an individual gives a check, and payment is refused because of insufficient funds or no account with the bank. We have many times held that such a check does not constitute cash payment, and only becomes payment when the check is honored by the bank; that is not the situation in the instant litigation. Appellant's statement from the brief, quoted in this footnote, would hardly seem to be correct under all circumstances. For instance, many persons, when receiving payment for goods or services from a celebrity by check, frame the check, rather than cash it. Could it be maintained that the celebrity did not pay?

ber of months after the delivery of the machine. Needless to say, it would appear that, if no down payment were made, company officials would have contacted Beaton within a few days after the delivery, particularly when the record discloses that Beaton was constantly making complaints that the machine was not performing satisfactorily.

An even more pertinent fact is that, on two occasions, the company sent Beaton a bill for $1,664.00, the bills referring to the charge as a "past due repair account."

It might be said that bookkeeping methods, as reflected by various statements sent by appellant to Beaton, and offered into evidence by him, were not such as to inspire confidence in the accuracy of the Beaton account.

We find no merit in the cross-appeal, and this can be disposed of briefly. Though maintaining that the machine was defective, and that the warranty had been breached, appellee paid the two remaining notes on the purchase price after discovering the alleged defects, used the machine from time to time over a three-year period, made no effort to return it and rescind the sale, and offered no evivdence of damages for which recovery is permitted under Ark. Stat. Ann. §§ 85-2-714 and 85-2-715.

Affirmed on both direct and cross-appeal.