Johnny TITTLE v. Ron WOODRUFF;
and Ernest Cate, Jo Dodson, and Job Serebrov
(Comprising the Washington County Election Commission)

95-375                                            907 S.W.2d 734

Supreme Court of Arkansas
Opinion delivered October 16, 1995

154

*Charles R. Fuqua*, for appellant.

*Marsha C. Woodruff*, for appellees.

TOM GLAZE, Justice. This is an election case which involves candidates who sought election to the office of Justice of the Peace of District 9 in Washington County. On or before April 5, 1994, John R. Smith filed as a Democratic Party candidate and Johnny Tittle filed as a Republican Party candidate for this office. Both candidates were unopposed. On or before June 7, 1994, the respective party county committees met to canvass election returns and certify the primary election results, and June 20, 1994 was the date political party county conventions met to certify nominees for township and other offices. *See* Ark. Code Ann. §§ 7-7-203(h) and -102 (Repl. 1993). No one contested either Smith's or Tittle's respective party certifications of nomination within the twenty-day period established in Ark. Code Ann. § 7-5-801 (Repl. 1993), which ended on June 27, 1994.

In preparation for the November 8, 1994 General Election, the respective party county committees or conventions were required under Ark. Code Ann. §§ 7-1-101(4) and 7-7-203(k)(2) (Repl. 1993) to file their final certified lists of township nominees no later than September 23, 1994. However, prior to that September 23rd date, Smith notified the Washington County

Democratic Committee by letter dated September 12, 1994, that he must withdraw his candidacy, because he discovered that he resided just outside Quorum Court District 9. In other words, Smith could not serve if elected.

On September 14, 1994, the Washington County Democratic Convention, pursuant to Ark. Code Ann. § 7-7-401 (Repl. 1993), chose Ronald G. Woodruff as its replacement for Smith, and it certified Woodruff as its party nominee for the District 9 Justice of the Peace position. Woodruff defeated Tittle in the November 8 General Election, but, on November 28, 1994, Tittle filed a declaratory judgment and mandamus action, asking the circuit court to declare Woodruff's election null and void, and requesting the county board of election commissioners to certify Tittle as the only candidate eligible for that office. The circuit court denied Tittle's request for relief and Tittle brings this appeal claiming the circuit court erred in doing so. We affirm.

Tittle's argument is premised on his reading of § 7-1-101(4) which defines "vacancy in nomination." That provision defines the term as the circumstances in which the nominee of a political party selected at a primary election shall not be certified as the nominee due to death, resignation, withdrawal, or other good and legal cause arising subsequent to nomination and preceding the final date for certification of nominations.

Tittle asserts that Smith had never been certified as the Democratic justice of the peace nominee for District 9, but instead he withdrew his candidacy on September 12th before his party committee certified his nomination on September 23rd. Because Smith withdrew when he did, Tittle contends no vacancy in nomination occurred as contemplated by § 7-1-101(4); therefore, Woodruff's nomination was void.

■ We first point out that, contrary to Tittle's assertion, Smith became the Democratic nominee for District 9 Justice of the Peace, and he was declared as such when he was certified as the unopposed winning candidate at the primary election. *See* § 7-7-102. On the first Monday following the general primary election held on June 14, 1994, the Washington County party conventions were required to meet, and immediately following the conventions, the respective party county committee members were mandated by law to certify their lists of duly nominated

candidates for county, township, and municipal officers to the county board of election commissioners and the county clerk. *See* § 7-7-203(i) and (j). By law, the party convention and committee actions here took place on or about June 20, 1994. As previously mentioned, no one contested Smith's certification of nomination or certificate of vote within the twenty-day period provided under § 7-5-801. As a consequence, Smith was the certified Democratic nominee for the District 9 Justice of the Peace position before and at the time he withdrew his nomination leaving a vacancy in September 1994.

Citing *Stewart* v. *Hunnicutt*, 178 Ark. 829, 12 S.W.2d 418 (1929), Tittle states he had no standing to challenge Smith's candidacy or certification. He then suggests that, if we uphold Woodruff's election in these circumstances, political parties can then allow ineligible candidates to file for an office, win the primary election and then the party could substitute an eligible nominee in the ineligible candidate's stead. Tittle laments that the filing deadline for candidates would be rendered ineffectual.

■ Tittle's voiced concern ignores established law that gives a citizen the right to challenge the qualifications and eligibility of a candidate and to remove his or her name from the ballot, if found ineligible. *See Davis* v. *Holt*, 304 Ark. 619, 804 S.W.2d 362 (1991); *State* v. *Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989). In the *Craighead County* case, this court noted that Ark. Code Ann. § 7-5-207(b) (Repl. 1993) prohibits the inclusion of an ineligible candidate on an election ballot; the court then set out the appropriate procedure whereby citizens could enforce that law by filing an action for mandamus and declaratory relief. This remedy, as mentioned in *Craighead County*, provides prompt consideration for determining a candidate's eligibility and, if determined ineligible, the removal of that candidate's name before the election. Arkansas's election procedure and remedies afforded voters, candidates and other interested parties leaves little leeway for the type abuse suggested by Tittle.

Finally, Tittle fails to address the fact that he had the opportunity to raise the legal issue of Smith's and Woodruff's eligibility immediately upon the Democratic Party's certification of Woodruff as that party's nominee on September 23, 1994. Under the rem-

edy afforded under *Craighead County*, either Tittle or a citizen could have legally challenged the placement of Woodruff's name on the November 8, 1994 General Election ballot, but for whatever reason, Tittle chose to challenge Woodruff's qualifications after the election.

While a voter, candidate or other interested party might still successfully challenge the results of an election after it is held, this court has held many times that elections will not be invalidated for alleged wrongs committed unless those wrongs were such to render the results doubtful. *Id.* That certainly is not the situation here, nor does Tittle suggest the November 8 election results themselves were in question.

For the reasons above, we hold the circuit court was correct in holding Woodruff's nomination complied with § 7-7-101(4) and in dismissing Tittle's complaint.