Arlanda JACOBS *v.*
The Honorable Harvey L. YATES, Circuit Judge, *et al.*

00-618                                                    27 S.W.3d 734

Supreme Court of Arkansas
Opinion delivered October 5, 2000

*Wilson & Valley*, by: *J. F. Valley* and *Don Etherly*, for appellant.

*L. Ashley Higgins, P.A.*, by: *L. Ashley Higgins*, for appellees.

RAY THORNTON, Justice. Appellant Arlanda Jacobs, a candidate for justice of the peace for district seven in Phillips County, brought a challenge to the qualifications of an opponent for the position, Doris Diane Tyler. She counterclaimed, challenging Jacobs's qualifications as well, and the circuit court found that neither party was qualified to stand for the position. Jacobs brings this appeal of the order below and we affirm, finding no merit to the appeal.

On May 5, 2000, appellant brought his Petition for Writ of Mandamus, removal from the ballot, and declaratory judgment against Tyler, the three members of the Phillips County Board of Election Commissioners, and Linda Faye White, the county clerk of Phillips County, alleging that Tyler, a resident of Phillips County, was not a resident of district seven and, therefore, was ineligible to run for the office. Jacobs requested that a hearing date be set within seven days, and the trial court set the matter for a hearing on May 16. White and Tyler were not served nor given notice of the petition until May 11, and one member of the Board of Election Commissioners was not served and given notice until the day of the hearing. The date of the election was May 23, 2000, and absentee balloting had already commenced at the time Jacobs filed his petition.

On the day of the hearing, Tyler filed a response, denying appellant's contention that she was ineligible to be a candidate, and

counterclaiming that Jacobs was not qualified to be a candidate because his check for payment of his filing fee, given on the day before the final date for filing and payment of the fee, had been dishonored when it was presented to his bank for payment. Tyler also filed a third-party petition and class action on behalf of "the voters and residents of Phillips County, who will be gravely and adversely [affected] should [Jacobs] be allowed to [flout] the law and remain a candidate for Phillips County Justice of the Peace District 7," seeking a writ of mandamus, removal from the ballot, and declaratory judgement. Tyler named the officers of the Phillips County Democratic Central Committee as well as Jacobs, and petitioned the court to direct the Committee, the Commission, the county clerk, and all other interested parties to disqualify Jacobs as a candidate, to remove his name from the ballot, and publish notice that any votes cast for Jacobs would not be counted.

On May 16, the election commission filed its separate answer contending that the ballots for the primary had already been printed, that the "chip" for tabulating votes had been programmed, and that the proper remedy would be to direct the commission to disregard any votes cast for an ineligible candidate. A similar separate answer was filed in response to the petition filed by Tyler. On the same day, the county Democratic committee filed its separate answer to the petition filed by Tyler, agreeing with the answer of the election commission with respect to the remedy available, and praying that "the court hear this case, declare the rights of the parties, and enter such orders as may be appropriate to direct the separate defendants in their official capacities with respect to the performance of [their] ministerial duties with respect to the subject matter hereof." A similar prayer was articulated in the answers of the election commissioners.

Jacobs challenged the standing of Tyler to file an answer and counterclaim, and further challenged her standing to file a petition for mandamus and declaratory judgment to have Jacobs's name removed from the ballot. Jacobs asserted that he was not given the requisite two days to respond to the petition, and sought a continuance. The trial court denied a continuance because of the nature of the proceedings, and, because all parties were present, proceeded with the scheduled hearing to determine the eligibility of each candidate. Tyler stipulated that she had learned that she did not reside in the district for which she had filed her candidacy, then

presented evidence in support of her contention that Jacobs had attempted to pay his filing fee with a check that was returned to the Democratic Central Committee by the bank for insufficient funds.

Following the hearing, the trial court found that Tyler was not a qualified elector for district seven and ordered that the election commission should not certify any votes cast for her in the election. On the counterclaim, the trial court, relying on *Fletcher v. Ray*, 220 Ark. 844, 250 S.W.2d 734 (1952), found that Jacobs's payment by a personal check that was returned for insufficient funds when presented to the bank for payment did not constitute payment prior to the filing deadline. The trial court found that he was not eligible for candidacy as provided by Ark. Code Ann. § 7-7-301 (Repl. 2000). Accordingly, the election commission was directed not to certify any votes cast for Jacobs in the election.

On May 24, 2000, the day following the election, Jacobs filed with the clerk of this court his petition for writ of prohibition, or writ of *certiorari*, motion to stay, or motion to expedite appeal from the order of the trial court. We granted the motion to expedite the appeal, denied the remaining requests, and now consider appellant's arguments on appeal. Jacobs raises four points on appeal.

■ For his first point on appeal, Jacobs argues that the trial court did not acquire jurisdiction to hear and determine the petition for writ of mandamus filed by Tyler. Jacobs misconstrues the nature of an action for mandamus. Mandamus is traditionally regarded as a remedy to be used on all occasions where the law has established no specific remedy, and justice and good government require it. *State v. Craighead Co. Bd. of Election Comm'rs.*, 300 Ark. 405, 779 S.W.2d 169 (1989). It is a writ used to enforce a specific right. *Id.* Here, appellant seeks to enforce Ark. Code Ann. § 7-5-207(b) (1999). That statute created a right in the people to the proper administration of election laws by prohibiting the inclusion of ineligible candidates on the ballot:

> No person's name shall be printed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of filing as a candidate for the office, to hold the public office for which he is a candidate. . . .

*Id.* The only practical method of enforcing this right is the remedy of mandamus. *Craighead County, supra.*

■ We recognize that the issue before us is not a post-election contest between two competing candidates, but is a proceeding to protect the public interest in requiring compliance with statutory requirements with regard to assuring that a candidate for election to an office may not be elected, or certified as a candidate for election to an office, when that person is not eligible to run or serve. When the eligibility of a person to appear on the ballot is controverted, it becomes a matter for the courts. *Ivy v. Republican Party*, 318 Ark. 50, 883 S.W.2d 805 (1994) makes it clear that the chairman and secretary of a political party do not have the judicial authority to determine that a candidate is ineligible to hold public office. Indeed, it is clear that such a determination should be made by a trial court. *Id*.

■ ■ Jacobs also asserts, without citation to authority, that service upon his counsel of Tyler's counterclaim and petition for writ of mandamus challenging his qualifications as a candidate was invalid to effect proper service of Jacobs. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent without further research that they are well taken. *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). Jacobs next contends that the trial court erred in failing to continue the hearing with regard to Tyler's counterclaim and petition for writ of mandamus because he was not given a minimum of two days' notice pursuant to Arkansas Civil Procedure Rule 78 (d)(2000), which provides that "upon the filing of petitions for writs of mandamus or prohibition in election matters, it shall be the mandatory duty of the judge or chancellor having jurisdiction to fix and announce a day of court to be held no sooner than two (2) and no longer than seven (7) days thereafter to hear and determine the cause." *Id*. We have previously addressed this issue in *Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 270 (1998), holding that the violation of the two-to-seven day provision does not deprive the court of jurisdiction in an election contest. *Id*. Furthermore, the trial court treated Jacobs's objection to proceeding on the counterclaim as a motion for a continuance, which he denied.

■ The denial of a motion for a continuance is within the sound discretion of the trial court, and the trial court's ruling will be reversed only if there is an abuse of discretion. *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994). The burden is on the

appellant to show an abuse of that discretion as well as to demonstrate prejudice before this court will consider the trial court's denial of a continuance as an abuse of discretion warranting reversal. *Id.* Here, where there is no showing that Jacobs was surprised by the allegations contained in Tyler's counterclaim, nor any arguments made to the trial court of any prejudice he was likely to suffer by the denial of the motion for continuance, the trial court will be affirmed. It is unlikely that one who invokes the jurisdiction of a court in an expedited proceeding to challenge the qualifications of his opponent in an election could show surprise or lack of notice when his own qualifications are similarly challenged in response. While the dissent makes an interesting argument regarding Jacobs's ability to obtain testimony from bank officials about the dishonor of his check, that argument was not presented by appellant to the trial court. The burden was upon appellant to make that argument below, so that the trial court might have the opportunity to consider it in making his ruling on the denial of the motion for continuance. Our law is well settled that we will not consider an argument raised for the first time on appeal, and a party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Ayers v. State,* 334 Ark. 258, 975 S.W.2d 88 (1998).

Jacobs also charges that Tyler's counterclaim was not filed within twenty days of the accrual of the cause of action, relying upon Ark. Code Ann. § 7-5-801 (Repl. 2000). The burden is clearly placed on the appealing party to provide both a record and abstract sufficient for appellate review. *Oliver v. Washington County,* 328 Ark. 61, 940 SW. 2d 884 (1997). While Jacobs does not bring forth a record sufficient to allow us to address this issue on appeal, the question of timeliness under the statute would be jurisdictional if the statute applied to this set of facts. However, the statute relied upon by appellant does not apply to this case, as it confers a right of action on a candidate to contest the certification of a nomination or of the vote *following* an election. *Id.* (emphasis added). Rather, Ark. Code Ann. § 7-5-207 (Repl. 2000), which does control this action as concerning the placing of names on the ballot, includes no such twenty-day limitation nor a guideline as to when the statute of limitations would begin to run. *Id.* In fact, our court established the procedure and manner to proceed under Ark. Code Ann. § 7-5-209 in our decision in *State v. Craighead County Bd. of Election Comm'rs., supra.*

■ For his second point on appeal, Jacobs relies on Ark. Code Ann. § 16-118-105(b)(1999), urging that the trial court erred in finding that Tyler had standing to challenge his qualifications for the office. Jacobs contends that Tyler lacked standing because she was not herself eligible as a candidate, contending that once Tyler was removed from the ballot as candidate, she lost her standing to petition the trial court for a writ of mandamus. He argues that only persons who were qualified candidates themselves could challenge his candidacy, and further contends that under section 105, only the state or the person to whom the office belongs can bring an action challenging a candidate. This statute is inapplicable to the matter at hand, as it concerns the usurpation or exercising of an office to which one is not entitled *following an election*. Tyler's action instead challenged Jacobs's qualifications to appear on the ballot as a candidate for the office, and we have established law that gives a *voter* the right to challenge the qualifications and eligibility of a candidate, providing remedies to voters, candidates, and other interested parties, including county election officials charged with the ministerial duties of oversight of the election. *Tittle v. Woodruff*, 322 Ark. 153, 907 S.W.2d 734 (1995).

At all times relevant to this case, Tyler was a resident and a voter of Phillips County seeking a writ of mandamus to require the Phillips County Election Commission and the Phillips County Democratic Central Committee to perform the ministerial duties required by statute for elections conducted in Phillips County. In *Tittle, supra,* it was argued that a political party might choose an ineligible candidate so that a substitute might make the race after the filing date had closed. In response, we stated: "Tittle's voiced concern ignores established law that gives a citizen the right to challenge the qualifications and eligibility of a candidate and to remove his or her name from the ballot, if found ineligible." *Id.*

It is also worthy of note that Blanche Robinson, the appellant in *Craighead County, supra,* was a voter of the county and brought an action in mandamus relating to candidates for two Justice of the Peace districts, as well as a candidate for municipal judge. As one can only claim domicile in one place, it is clear that the appellant did not live in both the Justice of the Peace districts at issue in that case. Appellant here cites no authority holding for the proposition that a voter of a county, petitioning for a writ of mandamus to compel a party central committee and county election commission

to follow statutory duties, must reside in that particular district, and we know of no requirement that a voter's standing to contest another's qualifications for an office in that county is dependent upon the establishment of that voter's own eligibility to run for the office.

Neither have we discovered, nor has appellant cited us to, any cases suggesting that a voter of Phillips County would lose standing to require the election commission of that county to follow the law. Even if such a rule existed, we note that there remained parties to the litigation who had standing to seek relief through mandamus. As the concurrence notes, the Phillips County Election Commission and the Democratic Central Committee prayed for declaratory relief from the trial court on the issue of the qualifications of the two candidates. Not only do the Commission and the Committee have standing to pursue such a question in court, indeed, we have held that they do not have the authority to make the determination as to eligibility in the absence of a judicial finding, by a trial court, as occurred here. *See Ivy, supra.* Certainly, they possess standing, as a result of their ministerial obligations under statute, to request a judicial determination whether a candidate was qualified to stand for the office in question.

For his third point on appeal, Jacobs challenges the trial court's determination that the payment of his filing fee with a check returned by the bank for insufficient funds did not constitute payment prior to the filing deadline. He urges that we overrule or distinguish *Fletcher v. Ray*, 220 Ark. 844, 250 S.W.2d 734 (1952). In *Fletcher* we held that the filing fee was not timely paid unless the check given in payment was paid on presentment to the bank. Payment was considered made on the date of the receipt of the check only when the check is paid in due course. *Id.* "Since there were not sufficient funds in his bank account to pay the check given in payment of his ballot fee when the check was presented to the bank, the check did not constitute payment." *Id.* We adopted the rule that the giving of a draft or bank check by a debtor for the amount of his indebtedness to the payee was not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the draft or check is accepted on condition that it shall be paid. *Id.* Accordingly, we held that the payment of a filing fee by a dishonored check in *Fletcher*, even though it was later paid in cash, did not constitute

timely payment of the filing fee where payment was effected after the deadline for the filing date. *Id.*

The same holds true here. Had Jacobs's check been honored by the bank upon first presentment by the party officials, the filing fee would have been considered paid as of the date of the receipt of the check. *Fletcher, supra.* However, its return by the bank for insufficient funds meant that the check given for the filing fee was not honored upon presentment. Therefore, there was no timely payment of the required filing fee, and *Fletcher, supra,* controls the disposition of this case.

Appellant's contentions that the committee handled the check as a "holder in due course" is misplaced, as there was no subsequent negotiation of the check by the committee to an innocent purchaser for good faith who could then assert his "holder in due course" defense when the check was dishonored. *See* Ark. Code Ann. § 4-3-302 (Repl. 1991). Similarly, neither Arkansas's adoption of Article 3 of the Uniform Commercial Code nor Ark. Code Ann. § 4-60-103 (Repl. 1996), concerning liability for restitution to be made for violation of the Arkansas Hot Check Laws, has overruled or abrogated the rule in *Fletcher* dealing with the timely payment of candidate filing fees. The issue here is not whether the check was ultimately paid, but, rather, whether the check for payment of the filing fee, for which a deadline was imposed under the state election laws, was good at the time it was presented to the bank. It was not. The check was dishonored and therefore the payment of the filing fee was rendered untimely. Making the check good later, or allowing a late payment in cash, would render the imposition of a deadline for the payment of the filing fee meaningless.

We note that while the dissent has posited the theory that the check might have been good but was possibly dishonored due to bank error, Jacobs in his argument to this court does not dispute that his check for payment of the filing fee was returned as dishonored upon first presentment. Nonetheless, the issue is not whether Jacobs had sufficient funds in his account at the time he gave the check for payment to the Committee; rather, as in *Fletcher,* the issue is whether the check was good upon presentment to the bank for payment. When a person gives a check which is good at the time, but withdraws his funds from the bank before the check is

presented, he may not contest the dishonor in the absence of unreasonable delay in presentment. *Fletcher, supra.* The burden of showing that there were funds on hand to meet the check was upon the drawer of the check, and if he does not show that there are funds subject to his check at all times after the making of the check, or some other arrangement by which payment of his check is guaranteed *at the time the payee may desire to present it,* he cannot claim damage. *Id.* (emphasis added).

■ For his final point on appeal, Jacobs contends that the trial court erred in admitting into evidence copies of the check made out to the committee with the bank's return stamped "insufficient funds," because the copies were not the best evidence. The "best evidence rule," as Arkansas Rules of Evidence Rule 1004 (2000) is popularly known, provides that:

> The original is not required, and other evidence of the contents of a writing . . . is admissible if: . . . at the time when an original was under the control of the party against whom it is offered, he was put on notice, by pleadings or otherwise, that the contents would be a subject of proof at the hearing; and he does not produce the original at the hearing.

*Id.* Jacobs acknowledges in his argument that he was in possession of the original of the check, which had been returned to him by the bank once it was ultimately paid. Because Jacobs did not produce the original, the best evidence available to Tyler was the copy of the check in the possession of the committee secretary. The trial court did not err in admitting the copies of the returned check.

■ In sum, we conclude that Jacobs's appeal is without merit and that the trial court correctly determined that any ballots cast for him in the primary election should not have been counted and certified by the election commission. The trial court is affirmed and the mandate is ordered issued within five days unless a petition for rehearing is filed. If a petition for rehearing is filed, the mandate will be stayed until the petition for rehearing is acted upon.

Affirmed.

GLAZE, J., concurs.

BROWN, IMBER, and SMITH, JJ., dissent.

Tom Glaze, Justice, concurring. The lack-of-standing issue raised by Jacobs in this case is easily resolved by recognizing that the Phillips County Board of Election Commissioners and the Phillips County Democratic Committee had the standing to request the relief they requested, namely, for the trial court to declare the parties' rights and direct the county election commissioners and county Democratic Committee members as to how they should proceed with respect to their election duties. For example, the Phillips County Election Commissioners are necessary parties in this litigation because they had the responsibility to provide the election ballots for the primary election and the ballots were to contain the names of the qualified and eligible candidates. Ark. Code Ann. § 7-5-207 (Repl. 2000); *see also* Ark. Code Ann. §§ 7-5-208, 7-5-211, and 7-5-407 (Repl. 2000). Obviously, the Phillips County Board of Election Commissioners was a necessary party so that complete relief could be afforded in this action which was brought seeking compliance with § 7-5-207. *See State v. Craighead County Bd. of Election Commr's*, 300 Ark. 405, 779 S.W.2d 169 (1989); Ark. R. Civ. P. 19 (2000).

Because I agree with the majority opinion that the Phillips County Board of Election Commissioners (and the Phillips County Democratic Committee) have standing in this action, I see no need for the court to address whether Doris Tyler had standing. For that reason, I concur with the majority on the standing issue.

Brown and Smith, JJ., dissenting.

Robert L. Brown, Justice, dissenting. Several aspects of the majority opinion are troubling to me.

The opinion initially concludes that Arlanda Jacobs made no showing of surprise by Doris Diane Tyler's counterclaim and the hearing held two hours after the counterclaim was filed. I disagree. A hearing had previously been set for 3:00 p.m. on May 16, 2000, on Tyler's residency, which was the sole issue raised by Jacobs in his *mandamus* petition. The issue of the insufficient funds check was not raised by Tyler until her counterclaim which was filed at 11:50 a.m. *on the day of the hearing*. Jacobs was not served with the counterclaim until after lunch on that same date, and the hearing began at 3:00 p.m. Jacobs objected to the hurried nature of the proceeding and argued that since Tyler's counterclaim was also a *mandamus* action which raised a new issue, he was entitled to two

day's notice before a hearing. *See* Ark. R. Civ. P. 78. The trial court, however, disallowed any continuance. As a result, Jacobs was unable to subpoena sufficient records from his own bank, First National Bank of Phillips County, or obtain Bank witnesses to testify about the status of his account, or otherwise prepare adequately for the hearing. No more than two hours' notice on a new issue of such significance easily meets the criteria for surprise and prejudice in my judgment.

Jacobs's counsel specifically objected to the hearing on the counterclaim on the basis that he was entitled to two day's notice. That is what Ark. R. Civ. P. 78(d) requires, as Justice Smith points out in his dissent. The majority's response is to cite the case of *Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 270 (1998). That case, however, only stands for the proposition that the two-to-seven day provision in Rule 78(d) does not deprive the trial court of subject-matter jurisdiction. It specifically leaves open the question of the rule's enforcement when there has been a timely objection based on a Rule 78(d) violation, as was the case here. The answer of the majority is that the trial court treated the objection as a motion for a continuance and went on. That is not enough. Rule 78(d) provides that in election matters, it shall be the "mandatory duty" of the judge to fix a hearing date "no sooner than two (2) days."

Why were Bank records and Bank witnesses important? From what we know, Jacobs paid his fee of $170 by check to the Phillips County Democratic Party on April 3, 2000. His bank records reflect these balances in his account on these dates:

> April 3    $5,851
>
> April 5    $5,679
>
> April 6    $679

The Democratic Party deposited his check on April 7, 2000, into its own Bank, Helena National Bank, four days after receiving it. Helena National Bank returned the check to the Party for insufficient funds a week later on April 14, 2000. Jacobs was not notified. The Party simply redeposited the check on advice of counsel on April 14, 2000, and it cleared. Jacobs's check was, therefore, good when given to the Party on April 3 and good for at least three days thereafter. We do not know if sufficient funds existed in Jacobs's

account on April 7, when the Party's Bank presented the check to Jacobs's Bank for payment. We do not know the balance in Jacobs's account on April 14. No evidence has been presented on this matter. But we do know that when the check was returned on April 14, the Party simply ran it back through, and it cleared. The reason that we do not know what funds Jacobs had in his account on April 14 is the lack of time afforded him to prepare. These gaps in our knowledge are all a direct result of the expedited hearing foisted on the parties by the trial court, and they support Jacobs's complaint of surprise.

The second troubling feature of the opinion is that the majority has expanded *Fletcher v. Ray*, 220 Ark. 844, 250 S.W.2d 734 (1952), to cover this situation. That case is distinguishable from the instant case in several important respects:

- In *Ray*, the candidate was notified of the insufficient funds in his account to cover the check given, and he went down to the Party and paid the fee in cash. Here, the Party simply redeposited the check without notifying Jacobs, and the check cleared. The Party apparently thought nothing more about it. This all occurred on April 14 which was more than a month before Tyler raised the issue in her counterclaim on May 16.

- In *Ray*, the check was not paid in due course because the candidate was notified and personally paid the fee in cash. Here, the check was paid in the ordinary course of business after the Party redeposited it without notifying Jacobs. Clearly, the Party did not view this matter as a blot on Jacobs's eligibility.

- In *Ray*, Bank witnesses presented the history of the candidate's checking account and testified that no mistake could have been made in returning the check for insufficient funds. Here, the hearing on Tyler's counterclaim was held so quickly that information on Jacobs's account could not be gathered from the Bank in time.

For *Ray* to be precedent, it should be on all fours factually with this case, and it is not. I further note that Act 465 of 1969 and Act 169 of 1977, now codified as Ark. Code Ann. § 7-7-301 (Repl. 2000), establish the procedure for party pledges and party filing fees, and they were enacted after the *Ray* decision. As the case notes under this statute state, the *Ray* case was decided "under prior law."

Next, there is the issue of Tyler's standing. Clearly, she does not reside in Justice of the Peace District 7 in Phillips County, as the trial court found. Yet, the majority grants her standing to contest Jacobs's eligibility to run for election in that district. The majority does so not based on the fact that she was a citizen of the affected district but apparently because she was a citizen of Phillips County. Does this mean that any citizen of Arkansas can go outside of his or her district and attack the eligibility of candidates for the state senate or state house of representatives not to mention candidates for the circuit court and congress anywhere in the state? It would appear so based on the broad holding of the majority. Yet I question whether a non-resident's interest in candidate eligibility is sufficient to give rise to standing.

The authority cited by the majority does not support its position. In *Tittle v. Woodruff*, 322 Ark. 153, 907 S.W.2d 734 (1995), which is cited by the majority, Tittle filed as a Republican for a JP District and asserted that he had no standing to contest the certification of the Democratic Party's nominee. We held that Tittle, as a citizen, did have standing to raise the eligibility of his Democratic counterpart. The important point, though, was that Tittle was a citizen of the affected JP District. In the case before us, Tyler is not. And in *State v. Craighead Co. Bd. of Elect. Comm'ns*, 300 Ark. 405, 779 S.W.2d 169 (1989), the issue of the standing of a citizen of Craighead County to contest the eligibility of candidates in two JP Districts and for municipal judge was never raised or considered by this court. Again, this principle of universal standing vested in a citizen to contest candidate eligibility regardless of the citizen's residence appears to have been expanded to embrace the facts of this case. I disagree that Tyler had standing to raise the *mandamus* issue.

Removal of someone from the ballot is a matter of the gravest significance, because it deprives the voters of a choice. The facts of this case do not warrant removal in my judgment, because Jacobs's bank ultimately paid the filing fee to the Democratic Party's account without Jacobs's knowledge or intervention. These facts differ markedly from those in *Ivy v. Republican Party*, 318 Ark. 50, 883 S.W.2d 805 (1994), where this court declined to allow a political party to remove a candidate from the ballot for good cause after nomination, thus creating a vacancy in nomination, without first petitioning circuit court to do so. Here, collection of the fee by the

Democratic Party *before nomination* was purely ministerial, and the Party voiced no objection on the payment issue until Tyler raised it more than a month later. Indeed, the Party found Jacobs eligible to be nominated with respect to payment of fees and signing the party pledge pursuant to Ark. Code Ann. § 7-7-301 (Repl. 2000).

Again, what precipitated the problems in this case was the expedited manner in which the counterclaim was tried in violation of Rule 78. Jacobs made the following assertion in his brief on appeal:

> Moreover, Jacobs was blind-sided and upon such short notice, was unable to get bank officials to trial to aid in his defense. He did not have time to go home to get the original check from his records to show proof of payment and dates of such payment and was unable to put forth the defense of a quality and character that he could have had appropriate notice and opportunity to object been granted.

The majority contends that Jacobs did not argue that returning his check might have been error. But the fact that he had been "blind-sided" by the counterclaim was urged throughout the hearing, and the fact that bank officials were not present to authenticate the check and Jacobs's account was a point alluded to by both sides at the hearing. I would reverse the decision of the trial court based on the violation of Rule 78(d). For that reason, I respectfully dissent.

L AVENSKI R. SMITH, Justice dissenting. The majority correctly states the analysis to be followed in cases such as this where a challenge is made to a candidate's qualifications prior to an election. The proper remedy is a Writ of Mandamus and a declaratory judgment in circuit court. However, I disagree that the writ should have been issued on the record before us.

The undisputed facts are that Jacobs filed an action to challenge the qualifications of Tyler on May 5, 2000 and served notice of the same on Tyler on May 11, 2000. The trial court set the matter for hearing on May 16, 2000 at 3:00 p.m. Approximately three hours before the hearing, Tyler filed her answer and a counter claim seeking Jacobs's removal from the ballot for late payment of fees. As the hearing commenced, Jacobs objected to the court proceeding on the basis that the applicable law required at least two

days' notice. The trial court overruled Jacobs's objection because of the court's constricted docket and stated it would not grant a continuance. The majority affirms the trial court's decision to proceed with the hearing citing *Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 270 (1998) for the proposition that Ark. R. Civ. P. 78(d)'s time limitations, though mandatory, are not jurisdictional. I disagree with the majority's holding that *Jenkins* controls and would instead hold that the court's decision to proceed with the hearing not merely within two days of service of the claim but hardly more than two hours after it was filed was reversible error. The combination of this decision and *Jenkins* will effectively eliminate the time requirement contained in Rule 78(d). Not only can a trial court apparently delay mandamus actions with impunity it can now also accelerate them. Even assuming the trial court correctly viewed Jacob's objection as a motion for continuance, to require a party to defend against a claim on three hours notice is at a minimum unfair and should constitute an abuse of discretion.

In *Jenkins*, this court held that delaying beyond the prescribed seven days did not deprive the trial court of jurisdiction. This case is not about whether the trial court had jurisdiction to accelerate the proceeding but whether it was fundamentally fair to the party defending the claim to do so. I would hold it was not, and therefore I dissent.

BROWN and IMBER, JJ., join.